(81 South. 256)

No. 21860.

CAMBRE v. WHITE CASTLE LUMBER CO.

(Feb. 3, 1919.    Rehearing Denied March 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT ☞101, 102(1)—MASTER'S DUTY—TOOLS AND APPLIANCES.

A master must furnish to his servant safe appliances with which to work and see that the appliances are kept in good condition.

2. MASTER AND SERVANT ☞101, 102(1)—MASTER'S DUTY—SAFE PLACE TO WORK.

A master must furnish to his servant a reasonably safe place in which to work.

3. MASTER AND SERVANT ☞101, 102(8)—TOOLS AND APPLIANCES—SAFEGUARDS.

The work of a sawyer in a lumber mill being a most hazardous occupation, it is the employer's duty to safeguard one employed as a sawyer.

4. MASTER AND SERVANT ☞264(11)—DEFECTS —PROXIMATE CAUSE—LIABILITY.

There can be no recovery where the evidence, so far as any certain deductions can be drawn from it, tends to prove that the accident was not caused by the defects complained of.

5. MASTER AND SERVANT ☞236(13)—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.

Where a sawyer, after discovery of a large sliver hanging from side of log while facing the saw, started the carriage back at its usual rate, and sliver pulled saw off and caused it to break, and a piece of the broken saw struck sawyer in the head, he was guilty of contributory negligence, and could not recover from his employer.

6. MASTER AND SERVANT ☞217(25)—ASSUMPTION OF RISK.

Where a large sliver hanging from side of a log which was facing the saw was dangerous, a sawyer whose attention was called to it, and who saw it, assumed the risk of getting log by the saw without accident, and where sliver pulled saw off and broke it, with resulting injury to sawyer, he could not recover.

Appeal from Twenty-First Judicial District Court, Parish of Iberville; C. K. Schwing, Judge.

Action by Hamilton T. Cambre against the White Castle Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered dismissing plaintiff's demand.

P. G. Borron, of Plaquemine, for appellant.

Marks & Le Blanc, of Napoleonville, and J. H. Pugh, of Plaquemine, for appellee.

SOMMERVILLE, J.    Plaintiff claims damages from the defendant for personal injuries suffered by him while in the employ of the latter, being engaged as a sawyer in a sawmill. He alleges fault and neglect on the the part of the defendant in failing to provide him with a safe place in which to do his work, in failing to furnish safe tools and appliances with which to do that work, and in failing to use reasonable safe care in selecting competent employés to keep the tools and appliances to be used in good, proper, and safe working condition.

Defendant answered, denying neglect or fault on its part, and alleged that the place where plaintiff was employed was a safe one to work in; that the tools and appliances were safe and in good condition; that the other employés in the sawmill did their work properly; and that plaintiff was himself at fault, and contributed to the accident which befell him.

There was judgment in favor of plaintiff and against defendant in the sum of $15,000, and defendant has appealed.

The accident to the plaintiff and the very great seriousness thereof are admitted by defendant to have occurred at the time and place stated in the petition, while plaintiff was engaged in operating a band saw in defendant's sawmill.

[1,2] "The master must furnish to his servant a safe appliance with which to work, a safe place in which to work, and he must, on proper inspection, see that the appliances are kept in good condition, and that the place assigned his servant to work in is reasonably safe." Wilkinson on Personal Injuries, pp. 32, 33.

If the employer fails to do these things, he may become liable for any injury on account of such failure.

[3] The position of sawyer in a lumber mill is a most hazardous and dangerous occupation; and it is the duty of the employer to safeguard his servant who is operating a saw.

[4] It is argued on behalf of plaintiff that the place in which he did his work as sawyer was not a safe place, because the band box or housing for the saw was not lined with sheet iron, and that there was no guard or shield for the levers.

The band box in the mill of defendant was lined with heavy wood, not with sheet iron. Doubtless a lining of sheet iron would be a better protection from accident than the heavy wood used by the defendant, and it is uncertain, for the record is not clear, as to whether the majority of band saws are protected with housing lined with sheet iron or not; but the point is immaterial, for the reason that the injury to the plaintiff did not result because of the improper housing of the saw, which broke, and inflicted the injury upon him. The evidence is clear that the housing was not in any manner affected by the broken saw, and the imperfect housing, if it was imperfect, did not contribute in any way to the accident to plaintiff.

"There can be no recovery where the evidence, so far as any certain deductions can be drawn from it, tends to prove that the accident was not caused by the defect complained of." Labatt, Master & Servant, vol. 2, § 803, p. 2209; O'Donnell v. American Mfg. Co., 112 La. 720, 36 South. 661.

Plaintiff alleges, and the evidence shows, that the accident to him resulted from the breaking of a band saw which he was operating, and that he was struck in the head by a broken piece of the saw while the saw was running at the rate of 8,000 to 10,000 feet per minute.

It is urged by plaintiff that, if the levers at which he was standing had been properly protected by a guard, he would not have been struck in the head and injured by a flying piece of the broken saw, and that it was the duty of defendant to have thus protected him and the levers which he was operating to move the carriage on which the log was resting, and which was being sawed.

A lever guard, as its name implies, is described to be a guard for the protection of the levers. One witness testified with reference to it:

"The sawyer stands way above it. It was to protect his hand right at the top end of the lever to a certain extent, and that would be all. The width of that shield is not over, I should say, about 16 inches. That is all the protection that is. That was put there in order that if a slab, or a piece of wood, or anything on the carriage came along, it would not hit your lever and knock it away from the sawyer. In other words, when you turn a long log on the carriage, it will hit your lever, and it is put there to protect the carriage; it is put there so you will have control over your carriage at all times."

It is further described as extending up to the sawyer's shoulders. It does not appear to be intended to protect the head of the sawyer, and the injury to plaintiff's head would

not have been averted if the guard had been in front of the levers which plaintiff was working with. And the absence of the lever guard· in no manner contributed to the accident to plaintiff's head.

One witness testified, and counsel argue, that the sawyer might have ducked behind the lever guard if one had been there. But plaintiff would have a very short time in which to have ducked from a piece of a broken saw which was going from 8,000 to 10,000 feet a minute. Counsel also argue that plaintiff was struck on one hand, and that he might have been cut by a flying piece of the broken saw which prevented him from using the lever and stopping the carriage on which the log was resting. Nothing is alleged in the petition about a wounded hand, and the physician who was examined as a witness did not refer to it in any way. Plaintiff testified that his hand was cut, but he did not testify as to the nature or extent of the wound. If the wound was made at the time and place that plaintiff's head was wounded, it would have been impossible for him to have worked the levers and reversed the carriage, or for him to have ducked behind the lever guard. The evidence does not show that the use of the lever guard is general in sawmills, and it does not show that the absence of it in any way contributed to the injury suffered by plaintiff. Defendant is therefore not liable for the injury to plaintiff which did not result on account of the absence of said lever guard.

The next contention of the plaintiff is that the saw which was being operated by him was not in good, proper, and safe working condition. Counsel say in their brief:

"We will not contend that we have made out a prima facie case of negligence against the defendant on this point."

The· saw was shown to have been in good condition, and in charge of plaintiff, as sawyer, for more than two years before the accident. There was a small crack in it which had been there for some time, about one half of an inch in length. But the break in the saw did not take place at that point. The break was about eight feet away from the crack. The crack therefore had nothing to do with the breaking of the saw and the accident.

The last ground of alleged negligence is that defendant failed to have competent employés to see that the tools and appliances in the mill, and particularly the saw which broke, were kept in good running order and condition. Reference is here made to the saw filer, whom the testimony shows was on a fishing expedition on the morning of the accident. But he appears to have been a competent man who had done his work carefully; and the breaking of the saw was not traced to defective filing, or failure to cut, or do any work with which the saw filer might have been connected.

[5,6] The contributory negligence alleged by defendant appears to have been sustained by the evidence. The log which was being sawed had had one slab taken off of one side, and the carriage was on its way back, with the teeth of the saw·facing in the opposite direction, at which time the off-bearer discovered a sliver hanging from the side of the log which was facing the saw, and he signaled to plaintiff of his discovery. Plaintiff stopped the carriage, and the off-bearer, with an ax, tried to cut off the sliver, but failed in his attempt. Plaintiff evidently saw the condition of the log, and started the carriage back at its usual rate of speed with the protruding sliver in sight. When the log reached the saw, the sliver, which appears to have been about six feet in length, and deeply rooted in the log, pulled the saw off and caused it to break, and a piece of the broken saw struck plaintiff in the head. The block setter, the tripper, and the dogger, who were employed at the time with plaintiff in the mill, all testified about to the same effect as did the off-bearer.

There was some difference in the testimony as to whether the sliver was on the top of the log or on the side of the log next to the saw. Counsel for plaintiff insists that the sliver was on the top side of the log, and that there was not, and could not have been, any apparent danger because of its presence, and that plaintiff felt satisfied that he could pass the log by the saw as he had already done once in sawing the first slab or board off the log. The evidence is very positive that the sliver came into contact with the saw, pulled the saw off, and caused it to break, whether the sliver was on the side or on the top of the log. Its presence appears to have been the sole cause of the breaking of the saw and of the accident to plaintiff. It was dangerous; plaintiff's attention was called to it; he saw it; and he assumed the risk of getting the log by the saw without accident. This was inexcusable negligence on the part of plaintiff; and he must abide the consequences of having assumed the risk.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of defendant, dismissing plaintiff's demand, at his cost.

PROVOSTY, J., takes no part, not having heard the argument.